IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SARAH JOHNSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No.  7:20-cv-00116-O |
| § | |
| NORTH TEXAS DANCERS, LLC d/b/a § | |
| BOMBSHELLS' TOPLESS, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Sarah Johnson's Motion for Summary Judgment (ECF Nos. 31–32), filed April 16, 2021. Having considered the motion, briefing, and applicable law, the Court **GRANTS** the motion.

**I.    BACKGROUND[1]**

Plaintiff Sarah Johnson ("Plaintiff") was an exotic dancer at Defendant North Texas Dancers, LLC's Wichita Falls strip clubs Bombshells' Topless, Alibi, and Vudu Lounge (collectively, "the Clubs") from May 2014 to March 2020. During that time, Defendant classified Plaintiff as an independent contractor, so Defendant did not pay her hourly wages or compensation, instead requiring her to pay a minimum $20.00 per-shift house fee. According to Plaintiff, Defendant knowingly and intentionally failed to classify her as an employee and, thus, owes her minimum wage compensation under the Federal Fair Labor Standards Act (FLSA).

Defendant interviewed and hired Plaintiff without requiring any certification, education, or specialized training to work at the Clubs. Once hired, Defendant had the ability to discipline, fine,

---

[1] Because Defendant failed to respond to the summary judgment motion, the Court considers the facts set forth in the motion (ECF No. 31), briefing (ECF No. 32), and the Sworn Declaration of Sarah Johnson (ECF No. 32-1) to be undisputed facts. Fed. R. Civ. P. 56(e)(2).

- 1 -

suspend, and terminate her. Defendant established shift schedules and determined which shifts each dancer would work, regulating the shifts with sign-in and sign-out sheets. Plaintiff's work schedule varied weekly, but she estimates, from September 2017 to March 2020,[2] she worked six shifts each week, totaling thirty hours of work.

When Plaintiff worked at the Clubs, Defendant supervised her to ensure quality job performance; enforced the Clubs' employment rules and work policies; established dance orders, locations, and music; controlled food, drink, and admission fee prices; and set names, length, description, and customer prices and promotions on all private and semi-private exotic dances. Plaintiff was dependent on Defendant successfully operating, advertising, attracting, and retaining customers to the Clubs to earn tips from customers. At no time did Plaintiff participate in managerial decisions for the Clubs or invest in the cost of operating or enhancing the Clubs to attract or keep customers.

Plaintiff sued Defendant in September 2020, alleging that Defendant willfully violated the FLSA, 29 U.S.C. §§ 203(m), 206, 216(b), for unlawful tip deduction and failure to pay federal minimum wage. *See* Compl., ECF No. 1. In November, Plaintiff sought to conditionally certify a class but failed to meet her burden of showing a group of similarly situated individuals with a desire to opt-in. *See* Mot. to Certify, ECF No. 12; Order, ECF No. 18. Three months later, Defendant's attorney sought to withdraw from his representation of Defendant. *See* ECF Nos. 21–22. At a February 8, 2021, hearing, the Court specifically warned that the corporate defendant may only be represented by licensed counsel and gave the corporate defendant's representative thirty days to find new counsel. *See* ECF No. 26; *see, e.g., Southwest Express Co. v. Interstate Com. Comm'n*, 670 F.2d 53, 55 (5th Cir. 1982) ("[A] corporation can appear in a court of record only

---

[2] Plaintiff identifies this as the "3-Year FLSA Recovery Period." Mot. ¶¶ 10, 13, ECF No. 32

by an attorney at law."). The Court then twice attempted to garner a report from Defendant's corporate representative as to whether the corporation had obtained counsel—to no avail. *See* ECF No. 27, 29. Because Defendant failed to obtain counsel, the Court directed Plaintiff to file a motion for summary judgment as to its claims. *See* Order, ECF No. 30. The motion is now before the Court. *See* Mot., ECF No. 31. Defendant again failed to respond, so the Court presumes the facts are undisputed.

## II.     LEGAL STANDARD

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be

some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250–52.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Where, as here, no response is filed to a motion for summary judgment, the court may not grant summary judgment by default. *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *see also Ford–Evans v. Smith,* 206 F. App'x 332, 334 (5th Cir. 2006). This is true even where the failure to respond violates a local rule. *United States v. Wilson*, 113 F. App'x 17, 18 (5th Cir. 2004). However, "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). The court may accept the movant's evidence and factual assertions as undisputed. Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"); *Jegart v. Roman Catholic Church of Diocese of Houma Thibodaux*, 384 F. App'x 398, 400 (5th Cir. 2010) ("When a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed . . . .").

### III. ANALYSIS

Plaintiff seeks summary judgment as to her FLSA minimum wage claim, contending (1) Defendant misclassified her as an independent contractor and owes her minimum wages for all hours worked and (2) Defendant charged her an unlawful house fee of $20.00 per shift as a

condition of her employment. Mot. 8–9, ECF No. 32. Defendant failed to obtain counsel and to respond to Plaintiff's motion. *See* ECF No. 27, 29, 30.

The FLSA sets a national minimum wage of $7.25 per hour for employees "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). To establish FLSA coverage, a plaintiff must show that she (1) personally engaged in commerce or the production of goods for commerce (individual coverage) or (2) was employed by an enterprise engaged in such activity (enterprise coverage). *See Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)). "Either individual or enterprise coverage is enough to invoke FLSA protection." *Id.* (emphasis omitted).

Plaintiff seeks enterprise coverage. *See* Compl. ¶ 18, ECF No. 1. The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as, *inter alia*, an "enterprise" that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

29 U.S.C. § 203(s)(1). The FLSA's accompanying regulations specify that an enterprise meets that threshold if the employer knows the business's gross receipts substantially exceed $500,000 or if the business's gross receipts before year-end already exceed $500,000 and its gross dollar volume over the previous 12 months exceeds $500,000 at the beginning of a particular quarter. 29 C.F.R. § 779.266(a)–(b).

The Court holds, based on Plaintiff's undisputed summary judgment evidence, that Plaintiff has established beyond a genuine dispute of material fact that Defendant is a covered

enterprise subject to the FLSA's minimum wage requirements. *See* Sworn Declaration of Plaintiff ¶¶ 5–6, ECF No. 32-1. Thus, the Court next considers whether Plaintiff was an employee under the FLSA.

### A. Plaintiff Was an Employee Under the FLSA

Plaintiff maintains that "[t]hough Defendant classified Plaintiff as an independent contractor, as a matter of law, Plaintiff was Defendant's employee with wage payment rights under the FLSA." Mot. 9, ECF No. 32.

"In FLSA cases for minimum wage and overtime compensation, a plaintiff must establish that she is an employee of the alleged employer." *Nelson v. Texas Sugars, Inc.*, 838 F. App'x 39, 42 (5th Cir. 2020). The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "The definition of employee under the FLSA is particularly broad." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). To determine whether a plaintiff is an employee, courts in the Fifth Circuit "apply the economic realities test" thereby "focus[ing] on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for [her]self." *Id.* at 343. "The contractual designation of a worker as an independent contractor is not necessarily controlling." *Bally v. Dreams Cabaret, LLC*, No. EP-17-cv-30-DB, 2018 WL 456029, at *3 (W.D. Tex. Jan. 16, 2018) (citing *Thibault v. BellSouth Telecomms., Inc.*, 612 F.3d 843, 845–46 (5th Cir. 2010)).

"Five non-exhaustive factors guide [the] inquiry, and no one factor is determinative: '(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing

the job; and (5) the permanency of the relationship.'" *Nelson*, 838 F. App'x at 42 (quoting *Hopkins*, 545 F.3d at 343). The Fifth Circuit has squarely found that topless dancers qualify as employees under the FLSA. *See Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 327 (5th Cir. 1993). Weighing five relevant factors, the panel concluded that "the economic reality is that the dancers are not in business for themselves but are dependent upon finding employment in the business of others." *Id.* at 329. Because the employment relationship is fact-intensive and case-specific, the Court addresses each factor in turn, concluding that the balance of the factors weighs in favor of Plaintiff's employee status under the FLSA.

*(1) Degree of Control Defendant Exercised Over Plaintiff*

First, the Court finds Defendant exercised a great deal of control over the dancers, including Plaintiff. A night club's substantial control over its hired exotic dancers may be evidenced by the club's (1) requiring compliance with weekly work schedules, even with input from the dancers, (2) fining the dancers for absences and tardiness and rule violations, (3) instructing the dancers what to charge for dances, even if at the behest of the dancers, (4) setting minimum standards for dancers' costumes, (5) deciding the music, even when considering dancers' preferences, (6) expecting dancers to mingle with customers when not dancing, and (7) promulgating rules concerning the dancers' behavior. *See Reich*, 998 F.2d at 327.

Here, according to the undisputed facts, Defendant (1) controlled the Clubs by establishing the hours, music style, food, drinks, and other entertainment; (2) set the market for dances at the Club by creating the names, lengths, descriptions, pricings, and specials for private and semi-private dances offered to the Clubs' customers and by controlling the advertising and targeted clientele, and (3) directed the dancers' behaviors by interviewing, hiring, disciplining, suspending, and firing dancers, by setting shifts, recording-keeping procedures, rules for dancers at work, by

approving dancers' requests to work a desired shift, and by directing when dancers were to appear on stage, when to perform with one or more dancer, and when to perform private or VIP dances in designated areas. *See* Sworn Declaration of Plaintiff 5–7, ECF No. 32-1. No facts suggest Plaintiff had any "ability to adjust . . . her own schedule, negotiate prices with customers, [or] keep whatever money was earned," which would "weigh . . . in favor of independent contractor status." *Nelson*, 838 F. App'x at 42 (citing *Eberline v. Media Net, L.L.C.*, 636 F. App'x 225, 226 (5th Cir. 2016)). Thus, the Court finds Defendant exerted significant control over Plaintiff, weighing in favor of an FLSA employment relationship.

*(2) Extent of the Relative Investments of Plaintiff and Defendant*

Second, when assessing whether the worker has made a significant capital investment, the Court "must compare the worker's investment in the equipment to perform his job with the company's total investment." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 810 (6th Cir. 2015). "This factor weighs against employee status where a worker provides his or her own tools and supplies." *Nelson*, 838 F. App'x at 42–43 (citing *Eberline*, 636 F. App'x at 228). A dancer's significant investment in her "own costume[] and makeup" may "weigh[] against employee status . . . ." *Id.* But, more often, a dancer's investment on costumes or house fees is likely much less than a club owner's "obvious significant investment . . . in operating a nightclub" including "own[ing] a liquor license, own[ing] the inventory of beverages and refreshments, leas[ing] fixtures for the night club (e.g., the stage and lights), own[ing] sound equipment and music, maintain[ing] and renovat[ing] the facilities, and advertis[ing] extensively." *Reich*, 998 F.2d at 328; *but see Nelson*, 838 F. App'x at 42–43 (noting that a night club's "significant investment in . . . advertising, décor, food and alcohol" are "not essential for dancers to perform their work" and, thus, "not necessarily comparable.").

According to Plaintiff's declaration, "Defendant paid and was fully responsible for all costs and expenses associated with the operation of [the Clubs]" while "Plaintiff, by contrast, made no investment or other financial contribution to the operation of [the Clubs]." Sworn Declaration of Plaintiff ¶¶ 24–26, ECF No. 32-1. Defendant's investment undisputedly far outweighs Plaintiff's, weighing in favor of an FLSA employment relationship.

*(3) Degree to which Plaintiff's Opportunity for Profit or Loss is Determined by Defendant*

Third, "this factor weighs against employee status where the worker could set his or her own schedule and profit by how he or she chose to 'market' himself or herself and which services he or she was willing to provide." *Nelson*, 838 F. App'x at 43 (citing *Eberline*, 636 F. App'x at 228). "[O]nce customers arrive at [a] nightclub[], a dancer's initiative, hustle, and costume significantly contribute to the amount of her tips[,]" but the nightclub "has a significant role in drawing customers to its nightclubs by overseeing advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food." *Reich*, 998 F.2d at 328. Under this factor, the court must consider whether the dancers "are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments." *Id.* (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1051 (5th Cir. 1987)).

Here, it is undisputed that "Defendant selected the location of the clubs, set the business hours, maintained the facilities and aesthetics, maintained the inventory of food and beverages, and advertised." Mot. 11–12, ECF No. 32 (citing *Reich*, 998 F.2d at 328); *see also* Sworn Declaration of Plaintiff ¶¶ 30–33, ECF No. 32-1. Further, Defendant controls and directs the entire market for dances within its Clubs by "establishing dance orders, setting customer prices on private and semi-private exotic dances, and setting private and semi-private dance specials and promotions for customers. *See* Sworn Declaration of Plaintiff ¶ 15, ECF No. 32-1. Thus, the Court

concludes that Defendant was fully responsible for Plaintiff's profit and loss, weighing in favor of an FLSA employment relationship.

*(4) The Skill and Initiative Required in Performing the Job*

Fourth, "this factor weighs against employee status where the worker controls his or her schedule and can profit based on the services offered to customers." *Nelson*, 838 F. App'x at 43 (citing *Eberline*, 636 F. App'x at 228–29). According to the Fifth Circuit, typically exotic dancers "do not exhibit the skill or initiative indicative of persons in business for themselves." *Reich*, 998 F.2d at 328; *Thompson*, 779 F. Supp. 2d at 149–50; *see also Nelson*, 838 F. App'x at 43 (citing *Eberline*, 636 F. App'x at 228–29) ("although no specific dancing skill was required, the dancers had to take initiative in terms of when they worked as well as their customer interactions.").

According to Plaintiff, she "did not possess, nor did Defendant require, any specialized skill as a condition of [her] working for Defendant as an exotic dancer at [the Clubs]." *See* Sworn Declaration of Plaintiff ¶ 43, ECF No. 32-1. Thus, the Court concludes that Plaintiff did not exhibit the specialized skill or initiative indicative of a person in business for herself, weighing in favor of an FLSA employment relationship.

*(5) Permanency of the Relationship*

Fifth, "arrangements that allow for movement from club to club and lack a set term weigh against employee status." *See Reich*, 998 F.2d at 328. According to the undisputed evidence, Plaintiff "was employed by Defendant as an exotic dancer [at the Clubs from] about May 2014 through about March 2020, a period of nearly six (6) years." Mot. 10, ECF No. 32; *see* Sworn Declaration of Plaintiff ¶ 2, ECF No. 32-1. Plaintiff contends that "[t]his was neither an *ad hoc* nor specially negotiated limited engagement." *Id.* The Court agrees. Thus, the Court concludes that, despite the often-transient nature of the work, Plaintiff and Defendant's relationship here over

six years was sustained, consistent, and apparently permanent, weighing in favor of an FLSA employment relationship.

Having considered the relevant factors, the Court concludes that each of the five factors point to the economic reality that Plaintiff was an employee under the FLSA and was not in business for herself. Because Defendant was covered by the FLSA and Plaintiff was an employee of Defendant under the FLSA, the Court turns to whether Defendant is liable to Plaintiff for unpaid wages and damages.

### B. Defendant is Liable to Plaintiff for Unpaid Wages and Damages

Plaintiff argues that Defendant failed to pay her wages at an hourly rate at least equal to federal minimum wage. *See* Mot. 15, ECF No. 32. The FLSA requires certain employers to pay minimum wages of $7.25 per hour. 29 U.S.C. § 206. "Any employer who violates the provisions of section 6 or section 7 of [the FLSA] [i.e., minimum wage and overtime rules] shall be liable to the employee or employees affected." 29 U.S.C. § 216(b). The FLSA provides that "[a]n action to recover the liability prescribed in [Section 216] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Based on the undisputed evidence, Plaintiff was not paid an hourly wage at all. *See* Sworn Declaration of Plaintiff ¶¶ 44–47, ECF No. 32-1.[3] Thus, the Court turns to the calculation of damages.

---

[3] Though Plaintiff received tips, Defendant failed to meet its burden of proving its entitlement to the tip credit, which would have reduced Plaintiff's hourly minimum wage to $2.13 per hour. *See Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 189 (5th Cir. 2015) (Defendants "bear the burden of establishing their entitlement to the tip credit."). To receive the tip credit, Defendant must have proven (1) the employee being paid less than minimum wage also earns tips; (2) the total amount of tips earned equals or exceeds the minimum wage; and (3) "all tips received by the tipped employee [are] retained by that employee." (internal brackets omitted). *Black v. DMNO, LLC*, No. cv 16-2708, 2018 WL 2306939, at *3 (E.D. La. May 21, 2018). "If an employee is required to share tips with an employee who does not customarily and

A court may find an employer violating the FLSA liable to an employee for the amount of unpaid compensation. 29 U.S.C. § 216(b). To calculate unpaid wages, courts "may rely on affidavits or other evidentiary documents in the record to determine the amount of damages." *Quiroz v. Wilhelm Com. Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *2 (D. Md. Nov. 17, 2011). A court must also consider any need to reimburse the employee for "tip-out" or "house fees" that may alter an employer's minimum wage obligations. *See, e.g., Thornton v. Crazy Horse, Inc.*, No. 3:06-cv-00251-TMB, 2012 WL 2175753, at *13 (D. Alaska June 14, 2012); *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 387 (S.D.N.Y. 2014). In addition to unpaid wages, the FLSA provides for "an additional equal amount as liquidated damages" unless the employer provides a "good faith" and "reasonable grounds" for its failure to comply with the FLSA. *Singer v. City of Waco*, 324 F.3d 813, 822 (5th Cir. 2003) (citing 29 U.S.C. §§ 216(b), 260).

Here, because Defendant charged Plaintiff a $20 house fee per shift and has failed to offer "good faith" and "reasonable grounds" for its failure to comply with the FLSA's federal minimum wage provision, the Court concludes that the amount of unpaid compensation is equal to the total unpaid wages, house fee reimbursements, and liquidated damages. Plaintiff attested that "during the 3-Year FLSA recovery period of September 2017 through March 2020, Plaintiff typically worked about four (4) shifts per week at Bombshells and another two (2) shifts per week at Alibi / Vudu Lounge for a total of about thirty (30) hours per week." Mot. 15, ECF No. 32; *see also* Sworn Declaration of Plaintiff ¶¶ 7–11, ECF No. 32-1. Thus, the Court calculates Plaintiff's damages, based on the 3-year FLSA recovery period, as follows:

---

regularly receive tips, the employer may not take a tip credit, and must compensate its employees at the full minimum wage rate." *Id.* Here, in addition to failing to meet its burden as to all elements, Defendant's collection of the house fee categorically fails the third prong. Thus, the Court proceeds under the national minimum wage for non-tipped employees of $7.25 per hour.

| Unpaid Wages | Plaintiff's Weeks Worked | Average Shifts Per Week | Average Hours Per Shift | FLSA Minimum Wage | House Fee Per Shift | Total |
|---|---|---|---|---|---|---|
|  | 131 | 6 | 5 | $7.25 | $20 | $44,212.50 |
| **Liquidated Damages** |  |  |  |  |  | $44,212.50 |
|  |  |  |  |  |  | $88,425.00 |

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff Sarah Johnson's Motion for Summary Judgment (ECF Nos. 31–32) and **ENTERS** judgment in the amount of $88,425.00, representing $44,212.50 back pay due to Plaintiff, in favor of Plaintiff against Defendant. Pursuant to Federal Rule of Civil Procedure 58(a), a final judgment shall issue separately.[4]

**SO ORDERED** on this **24th day** of **May, 2021**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[4] Should Plaintiff intend to seek attorneys' fees and costs in a post-judgment petition, as indicated in her motion, she may do so in accordance with Federal Rule of Civil Procedure 54(d).